IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ANTHONY DALE RUSSELL, ) | |
| AIS 112117, ) | |
|  ) | |
| Plaintiff, ) | |
|  ) | |
| v. ) | CASE NO. 2:20-cv-634-WKW-JTA |
|  ) | |
| WARDEN BUTLER, et al., ) | |
|  ) | |
| Defendants. ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Pursuant to 42 U.S.C. § 1983, Plaintiff Anthony Russell, proceeding *in forma pauperis* and *pro se*, filed this lawsuit for damages contending that Defendants violated his federally protected rights through their confiscation of his property, imposition of improper disciplinary action, and failure to comply with agency rules and regulations. Named as defendants are Warden Reosha Butler; Sergeants Billy Blue, Kelvin Teal, and Mary Bowen; and Correctional Officers Sharesha Money and Bridgett Bryant, all of whom are or were at all relevant times, employees of the Elba Community Based Facility in Elba, Alabama. Doc. No. 1 at 5–6; Doc. No. 34 at 1–2.

Defendants filed a Special Report with supplement (Docs. No. 34, 37) which includes relevant evidentiary materials in support, including affidavits and prison records, addressing the claims presented by Russell. In these reports Defendants deny they violated Russell's constitutional rights.

After reviewing the Special Report and supplement, the Court issued an Order on March 29, 2021, requiring Russell to respond to the reports with affidavits or statements made under penalty of perjury and other evidentiary materials. Doc. No. 38 at 2. The Order specifically cautioned that, unless a party presented sufficient legal cause, the Court would treat the report as a motion for summary judgment, and rule on the motion after considering any response. *Id.* at 3. On April 7, 2021, Russell filed a response. Doc. No. 39. Pursuant to the March 29, 2021, Order, the Court now treats Defendants' Special Report as a motion for summary judgment and concludes the motion is due to be granted.

## I.   RELEVANT FACTS[1]

Russell alleges that in December of 2018 Warden Butler confiscated his property—valued between $1900 and $2200—which he had not been allowed to mail home. Six months later, in May 2019, Warden Butler confiscated over $1,100 of Russell's property including cigarettes and cosmetics. Again, Russell claims he was not allowed to send the property home and states there was no basis for confiscation of the property. In addition to the foregoing property, Russell asserts Defendants had a "trunk full" of his clothing and his upper and lower partials which adversely effected his ability to chew his food and reflected a total disregard for his health. Russell also challenges matters associated with a

---

[1] Where facts are in dispute, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992). Accordingly, the "facts" set forth herein are merely for purposes of resolving summary judgment and may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1400, *opinion modified on reh'g*, 30 F.3d 1347 (11th Cir. 1994) (citation omitted) (explaining that "what we state as 'facts' . . . for purposes of reviewing the rulings on the summary judgment motion [] may not be the actual facts")

2

disciplinary he received on May 14, 2019, for possession of contraband (currency) including an allegation that a conspiracy existed to cover up Sergeant Blue's mishandling of the contraband and also complaining that confiscation of his eyeglasses before the hearing impacted his ability to defend himself. Finally, Russell argues Defendants failed to follow agency rules and regulations regarding the challenged conduct. Doc. No. 1 at 5–6.

Russell signed his Complaint under penalty of perjury. (Doc. No. 1 at 4.) Therefore the Court will treat the Complaint as evidence when ruling on Defendants' motion for summary judgment. *Sears v. Roberts*, 922 F.3d 1199, 1206 (11th Cir. 2019). Russell's opposition (Doc. No. 39 at 1–9), however, is unsworn. Therefore, the Court does not treat its factual assertions as evidence on summary judgment. *See id.*; *Roy v. Ivy*, 53 F.4th 1338, 1347 (11th Cir. 2022) (citing *Carr v. Tatangelo*, 338 F.3d 1259, 1273 n. 26 (11th Cir. 2003), *as amended*, (Sept. 29, 2003) (noting that "[u]nsworn statements may not be considered by a district court in evaluating a motion for summary judgment."); *see also Mosley v. MeriStar Mgmt. Co., LLC*, 137 F. App'x 248, 252 n.3 (11th Cir. 2005) (noting that "the complaint was unverified and therefore could not be considered evidence supporting [plaintiff's] claim" on summary judgment).

## II.     STANDARD OF REVIEW

Under Rule 56(a) of the Federal Rules of Civil Procedure, a reviewing court must grant a motion for summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute "is 'genuine' if the record as a whole could lead a

reasonable trier of fact to find for the nonmoving party. . . . [A dispute] is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The party asking for summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and alerting the court to portions of the record that support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, once the movant has satisfied this burden, the nonmovant is similarly required to cite portions of the record showing the existence of a material factual dispute. *Id*. at 324. To avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In determining whether a genuine dispute for trial exists, the court must view all the evidence in the light most favorable to the nonmovant and draw all justifiable inferences from the evidence in the nonmoving party's favor. *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003); *see* Fed. R. Civ. P. 56(a).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation, a *pro se* litigant does not escape the burden of sufficiently establishing a genuine dispute of material fact. *Beard v. Banks*, 548 U.S. 521, 525 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, a plaintiff's *pro se* status alone does not mandate this Court disregard elementary principles of production and proof in a civil case.

## III. DISCUSSION

As grounds for their motion for summary judgment, Defendants argue, *inter alia*, that Russell's § 1983 claim for money damages against them in their official capacities is barred by the Eleventh Amendment and in their individual capacities they are entitled to qualified immunity on the § 1983 claim for monetary damages. Doc. No. 34 at 4–6, Doc. No. 37 at 4. Defendants further maintain that Russell's § 1983 claims fall short on the merits because they did not violate any of Russell's constitutional rights. *Id.*

### A. Sovereign Immunity

Russell seeks unspecified amounts of damages on his claims for relief. Doc. No. 1 at 7. In response, Defendants assert Russell's suit against them, to the extent they are sued in their official capacities, is barred by Eleventh Amendment immunity. Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). The Eleventh Circuit has held:

> [T]he Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies [or employees]. There are two exceptions to this prohibition: where the state has waived its immunity or where Congress has abrogated that immunity. A State's consent to suit must be unequivocally expressed in the text of [a] relevant statute. Waiver may not be implied. Likewise, Congress' intent to abrogate the States' immunity from suit must be obvious from a clear legislative statement.

*Selensky v. Alabama*, 619 F. App'x 846, 848–49 (11th Cir. 2015) (quotation marks and citation omitted). Thus, a state official may not be sued in his official capacity unless the State has waived its Eleventh Amendment immunity, *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the State's immunity, *see Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 59 (1996). "Alabama has not waived its

Eleventh Amendment immunity in § 1983 cases, nor has Congress abated it." *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1525 (11th Cir. 1990)); Ala. Const. Art. I, § 14. Thus, Russell's suit against Defendants in their official capacities is unavailing because as state actors they are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages. *Selensky*, 619 F. App'x at 849; *Jackson v. Georgia Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994).

    **B.**    **Qualified Immunity**

Regarding Russell's claims against Defendants in their individual capacities, they argue that Russell's allegations fail to state a claim and that they are entitled to qualified immunity. Qualified immunity offers complete protection from civil damages for government officials sued in their individual capacities if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is not merely a defense against liability but immunity from suit, and the Supreme Court "repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009) (quotation marks and citation omitted).

To receive qualified immunity, the public official must first prove he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). There is no dispute that Defendants were acting within the course and scope of their discretionary authority when the

6

challenged incidents occurred. Russell must, therefore, allege facts that, when read in a light most favorable to him, show that Defendants are not entitled to qualified immunity. *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).

To satisfy his burden, Russell must show two things: (1) that a defendant committed a constitutional violation and (2) that the constitutional right a defendant violated was "clearly established." *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir. 2004). "To be clearly established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right. . . . In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (citations and quotation marks omitted) (alteration in original). "Clearly established law" means (1) "a materially similar case has already been decided;" (2) "a broader, clearly established principle that should control the novel facts of the situation;" or (3) "the conduct involved in the case may so obviously violate the constitution that prior case law is unnecessary." *Gaines v. Wardynski*, 871 F.3d 1203, 1208–09 (11th Cir. 2017) (citations omitted). The controlling authority is from "the Supreme Court of the United States, the Eleventh Circuit, or the highest court in the relevant state." *Id.* at 1209. "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (citations and quotation marks omitted). The Eleventh Circuit "has stated many times that if case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Gaines*, 871 F.3d at 1210 (citations and

quotation marks omitted). "Exact factual identity with the previously decided case is not required, but the unlawfulness of the conduct must be apparent from pre-existing law." *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011) (citation omitted). If a plaintiff cannot establish both elements to satisfy his burden, the defendants are entitled to qualified immunity, and the court may analyze the elements "in whatever order is deemed most appropriate for the case." *Rehberg v. Paulk*, 611 F.3d 828, 839 (11th Cir. 2010) (citing *Pearson*, 555 U.S. at 241–42).

  **C.**  **The Property Claim**

In response to Russell's allegations regarding confiscation of his property, Defendants maintain that during a routine job check performed on May 14, 2019, at Russell's worksite, $565.85 was found at his workstation. Docs. No. 34-2, 34-3 at 2, 34-4 at 2. Warden Butler testifies that Russell admitted he obtained the funds through the sale of aluminum cans found at his job site. Docs. No. 34-2 at 2, 34-3 at 2. Because prison regulations prohibit inmates from possessing currency, which is considered contraband, the money was confiscated and prison officials transported Russell back to the Elba Work Release Center where he was placed in restrictive housing. Docs. No. 34-4 at 2. Sgt. Blue counted the currency found in Russell's possession and states he never left the presence of prison officials, including Warden Butler, while doing so. Doc. No. 34-3 at 2. After counting the currency Sgt. Blue created a receipt on May 14, 2019, for the money confiscated from Russell totaling $565.85, which the account clerk confirmed. Doc. No. 34-3 at 2; Doc. No. 34-2 at 2–3, 5. Those funds were then placed in Russell's inmate account. Doc. No. 34-3 at 2; Doc. No. 34-2 at 3. Russell received a disciplinary for

possessing currency in violation of Rule 934—possession of contraband. Doc. No. 34-3 at 2; Doc. No. 37-1 at 1–2.

On May 15, 2019, Sergeant Bowen inventoried Russell's personal property in his possession at the Elba Work Release facility which he verified by signing the inmate property sheet. Doc. No. 34-2 at 2, 6; Doc. No. 34-4 at 2. Russell's property was secured in the property room and then transferred with him to Ventress Correctional Facility on May 20, 2019. Doc. No. 34-2 at 3, 7. Although Sergeant Bowen states there were no eyeglasses or teeth (partials) listed on Russell's property sheets, review of these documents reflects that a pair of eyeglasses was among the items inventoried. Doc. No. 32-4 at 6–7; Doc. No. 34-4 at 2.

Russell's allegation regarding the confiscation of currency found in his possession is considered a deprivation of property claim. Although Russell does not identify the constitutional basis for this claim, the right implicated is due process. *See Bd. of Regents of State Colleges v. Roth,* 408 U.S. 564, 569 (1972). As an inmate, Russell has no property right protected by the Fourteenth Amendment to possess contraband while in prison. *Harris v. Forsyth*, 735 F.2d 1235 (11th Cir. 1984) (holding that confiscation of a prisoner's money, pursuant to a rule forbidding prisoners to possess money, did not constitute an unconstitutional deprivation of property in violation of § 1983). Rules prohibiting prisoners from possessing unauthorized property and permitting seizure of such property are constitutional because the "state has a compelling interest in maintaining security and order in its prisons and, to the extent that it furthers this interest in reasonable and non-arbitrary ways, property claims by inmates must give way." *Id.* (internal quotation marks and

9

citation omitted); *see also Baker v. Piggott*, 833 F.2d 1539, 1540 (11th Cir. 1987) (affirming dismissal of due process claim where officer confiscated cash money deemed "contraband" under prison rules).

Russell also alleges various items of personal property were taken and never returned. Doc. No. 1 at 5. Russell further claims that Warden Butler and Sgt. Bowen allowed Sgt. Blue to cover up a discrepancy in the amount of currency found in Russell's possession and the amount which Sgt. Blue reported as having been confiscated. Doc. No. 1 at 5–6. Again, the right implicated by the deprivation of property is the denial of due process of law as provided by the Fourteenth Amendment. *See Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part on other grounds, Daniels v. Williams*, 474 U.S. 327 (1986). Despite Russell's contention that he had no other recourse to recover his personal property than to file suit against Defendants for its return (Doc. No. 1 at 5), an allegation that a government employee engaged in the unauthorized, intentional deprivation of property fails to state a claim for violation of the procedural due process requirements of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available through an adequate state tort remedy. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Rodriguez-Mora v. Baker*, 792 F.2d 1524, 1527 (11th Cir. 1986) (finding no unconstitutional deprivation of property in the case of negligent or intentional loss).

Regarding the alleged deprivation of his property by Alabama state employees, Russell's remedy, if any, lies within the Alabama Code and the courts of Alabama. Alabama Code § 41-9-60 (1975) provides for the State Board of Adjustment to consider claims against the State of Alabama or its agents by filing a claim with the State Board of

10

Adjustment. *Smith v. Governor for Alabama*, 562 F. App'x 806, 817-18 (11th Cir. 2014) (holding that the Alabama Board of Adjustments, pursuant to Ala. Code § 41-9-60, *et seq.*, provides a meaningful post-deprivation remedy through which a state inmate may seek relief for the loss or denial of property even though a recovery may not be the equivalent of a § 1983 action). The purpose of Ala. Code § 41-9-60 is to provide "a method of payment by the State of Alabama or any of its agencies, commissions, boards, institutions or departments to persons for injuries . . . occasioned by the State of Alabama or any of its agencies ...." Where a meaningful post-deprivation remedy for the challenged loss is available to a plaintiff, the state action is not complete "until and unless it provides or refuses to provide a suitable post-deprivation remedy." *Id. See also McKinney v. Pate*, 20 F.3d 1550, 1557 (11th Cir. 1994) (holding that "only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise").

      The State of Alabama, through its Board of Adjustment, provides a meaningful post-deprivation remedy for Russell to seek redress for the alleged improper deprivation of his property. Ala. Code § 41-9-60, *et seq.*, *Smith*, 562 F. App'x. at 817–18. Because those persons responsible for the deprivation of Russell's property are employees of the State of Alabama, available post-deprivation remedies exist under the state statute. Should the Board of Adjustment deny Russell's claim, he may bring an action for compensation in the Alabama state courts. These post-deprivation remedies available to Russell under Alabama law are sufficient to satisfy due process. *Hudson*, 468 U.S. at 534–35; *Lindsey v. Storey*, 936 F.2d 554, 561 (11th Cir. 1991) (emphasis in original) (explaining that "as long as *some*

11

adequate post-deprivation remedy is available, no due process violation has occurred."); *Dawson v. City of Montgomery*, Case No. 2:06-cv-1057-WKW, 2008 WL 659800, at *8 (M.D. Ala. Mar. 6, 2008) (finding Alabama's conversion statute, Ala. Code § 6-5-260 (1975), is an adequate post-deprivation remedy).

An adequate post-deprivation remedy is available to Russell through the Board of Adjustment or the Alabama court system. Thus, Russell has not shown that alleged deprivation of his property, whether such was the result of an intentional or negligent act, rose to the level of a violation of the Due Process Clause of the Fourteenth Amendment. Defendants are therefore entitled to qualified immunity and their motion for summary judgment is due to be granted on this claim.

### D. The Disciplinary Claim

Russell alleges improprieties occurred during disciplinary proceedings for the infraction he received for violating Rule 934—possession of contraband. Doc. No. 1 at 6. Sgt. Blue and Officers Money and Bryant, Russell claims, conspired to destroy or alter a document which would have determined the outcome of his disciplinary proceeding for violating Rule 934. Russell maintains these defendants destroyed the first disciplinary report issued for his violation of Rule 934 and then intimidated him into signing a second disciplinary report. *Id.* Russell also alleges he could not properly defend himself during the disciplinary proceeding because he did not have his eye glasses which prevented him from preparing questions for the hearing. *Id.*

Sergeant Blue and Officers Money and Bryant deny destroying or altering any documents related to Russell's disciplinary report for his violation of Rule 934. Doc. No.

12

34-3 at 2; Doc. No. 34-6 at 1–2; Doc. No. 34-9 at 1–2. On May 16, 2019, Defendant Bryant completed the initial service of this disciplinary report on Russell which he refused to sign. Doc. No. 34-9 at 1; Doc. No. 37-1 at 1. Defendant Teal served as the hearing officer for the disciplinary proceeding and testifies Russell did not request assistance prior to commencement of the hearing and did not mention efforts to obtain eye glasses to prepare for the hearing. Doc. No. 35-5 at 2.

Russell entered a not guilty plea to the charge of possession of contraband. Doc. No. 37-1 at 1. At the hearing Russell testified he was not guilty because prison staff wrote him up in the Warden's office, he signed the document and received a copy, and then "they . . . took the disciplinary and served me another one and I refused to sign it." *Id.* While Russell's reason for not signing the disciplinary report served on him on May 16, 2019, is unclear, the record is devoid of evidence that any defendant conspired to destroy or alter documents, that they subjected him to any intimidation or duress during the disciplinary proceedings, or that he was unable to defend against the charges. Russell has also produced no evidence that the currency confiscated from his worksite was not contraband as defined by prison rules and regulations. *See* Doc. No. 34-9.

First, Russell's allegation that Defendants conspired to violate his rights regarding the disciplinary he received for possession of contraband entitles him to no relief. To state a § 1983 conspiracy claim, "a plaintiff 'must show that the parties "reached an understanding" to deny the plaintiff his or her rights [and] prove an actionable wrong to support the conspiracy.' " *Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty., Fla.*, 956 F.2d 1112, 1122 (11th Cir. 1992) (brackets in original) (quoting *Bendiburg v. Dempsey*, 909

13

F.2d 463, 468 (11th Cir. 1992)). The linchpin for stating a conspiracy claim is an agreement. *Id*. "[A] conclusory allegation of agreement at some unidentified point does not supply facts adequately to show illegality." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). A conspiracy allegation also "must be placed in the context that raises the suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action." *Id*.; *see Harvey v. Harvey*, 949 F.2d 1127, 1133 (11th Cir. 1992) (holding the stringing together of steps in the commitment process without alleging contacts to prove an understanding was reached did not state a conspiracy claim).

Here, Russell's allegation that Defendants conspired or acted in concert to violate his constitutional rights regarding issuance of the challenged disciplinary are vague, conclusory, and wholly lacking in any factual development suggesting the existence of a conspiracy. *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984) (holding that a conspiracy allegation that is vague and conclusory fails to state a claim). " 'It is not enough to simply aver in the complaint that a conspiracy existed.' " *Allen v. Sec'y, Fla. Dep't. of Corr.*, 578 F. App'x 836, 840 (11th Cir. 2014) (quoting *Fullman*, 739 F.2d at 557).

Next, Russell alleges a violation of his due process rights stemming from the disciplinary imposed for his possession of contraband. Doc. No. 1 at 6. The Eleventh Circuit has made clear that there are two instances in which a prisoner may be deprived of a due process liberty interest under § 1983:

> The first is when a change in the prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court. The second situation is when the state has consistently bestowed a certain benefit to prisoners, usually through statute or administrative policy, and the deprivation of that benefit imposes atypical and significant hardship on

14

the inmate in relation to the ordinary incidents of prison life."

*Morales v. Chertoff*, 212 F. App'x 888, 890 (11th Cir. 2006) (quoting *Kirby v. Siegelman*, 195 F.3d 1285, 1290–91 (11th Cir. 1999); *see also Sandin v. Conner*, 515 U.S. 472, 484 (1995)). "In the first situation, the liberty interest exists apart from the state; in the second situation, the liberty interest is created by the state." *Bass v. Perrin*, 170 F.3d 1312, 1318 (11th Cir. 1999).

Following Russell's disciplinary hearing on May 18, 2019, Sgt. Teal found him guilty of being in possession of contraband and sanctioned him to 45 days of extra duty, loss of canteen, telephone, and visitation privileges for 45 days, and recommended him for a custody review. Doc. No. 37-1 at 1–2. The deprivations imposed do not amount to a Constitutional or state-created liberty interest. The Constitution does not provide an inmate a right to telephone, canteen, or visitation privileges. *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460–61 (1989) (explaining that an inmate does not have a protected interest in visitation arising from the Due Process Clause); *Overton v. Bazzetta*, 539 U.S. 126, 131, 134 (2003) (upholding a two-year restriction on visitation privileges and noting that prison confinement requires the surrendering of liberties and privileges enjoyed by other citizens); *Charriez v. Sec'y, Fla. Dep't of Corr.*, 596 F. App'x 890, 894 (11th Cir. 2015) (upholding a one-year restriction on visitation privileges and noting that plaintiff "did not have a protected liberty interest in unfettered visitation privileges while in prison"); *Walker v. Loman*, Case No. 2:06-CV-896-WKW, 2006 WL 3327663, at *1, *3 (M.D. Ala. Nov. 15, 2006) (holding that 90-day loss of telephone, store, and visitation privileges did not result in the deprivation of a liberty interest). Nor is there any state-created

15

liberty interest in telephone, canteen, or visitation privileges in Alabama. *See Dumas v. State*, 675 So. 2d 87, 88–89 (Ala. Crim. App. 1995).

The imposition of two extra hours of duty per day for 45 days likewise fails to implicate a Constitutional or state-created liberty interest to which Russell is entitled. *See Spinks v. Bailey*, Case No. 5:15-CV-1580, 2016 WL 4578339, at *4 (N.D. Ala. June 24, 2016), *report and recommendation adopted*, 2016 WL 4541019 (N.D. Ala. Aug. 31, 2016) (finding "the Supreme Court and Eleventh Circuit have never found liberty interests arising from the due process clause in connection with the temporary institution of extra duty"); *Zamudio v. State*, 615 So. 2d 156, 157 (Ala. Crim. App. 1993) (explaining that "[s]tore and telephone privileges are not liberty interests, nor does a prisoner have a right not to have extra work duty imposed"); *Summerford v. State*, 466 So. 2d 182, 185 (Ala. Crim. App. 1985) (stating that "[b]ased on the reasoning of . . . United States Supreme Court cases, we do not believe [a plaintiff has] a 'liberty interest' protected under the due process clause . . . in being unburdened by an extra work detail").

Finally, the recommendation for a custody review and Russell's subsequent transfer from a work release facility to an institution after being found guilty of a rule violation does not mark a "dramatic departure from the basic conditions" of his sentence. *Sandin*, 515 U.S. at 485. As an inmate confined in the Alabama prison system, Russell has no constitutionally protected interest in the procedure affecting his classification level because the resulting restraint, without more, does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. Because Russell has no constitutionally protected interest in the level of his

16

custody classification, correctional officials may assign him to any classification level without implicating the protections of due process. *See Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976) (noting that the Constitution itself confers no right upon an inmate to any particular custody or security classification); *Meachum v. Fano*, 427 U.S. 215, 225 (1976) (explaining that "[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose"). The Constitution also provides no liberty interest in remaining on work release. *Olim v. Wakinekona*, 461 U.S. 238, 245-246 (1983) (finding a prisoner has no constitutional right to be confined in a particular institution); *Francis v. Fox*, 838 F.2d 1147, 1149–50 (11th Cir. 1988) (holding that there is no state–created liberty interest in participation in Alabama's work release program).

Here, the Court finds that accepting Russell's evidence as true and drawing all justifiable inferences in his favor, he has failed to demonstrate a due process violation. Because Russell has not shown that he has been deprived of any Constitutional or state-created liberty or property interest as a result of the challenged conduct, Defendants are entitled to qualified immunity and summary judgment is due to be granted in their favor on this claim.

### E.     The Violation of Agency Regulations Claim

Russell maintains that Defendants are required to follow all rules and regulations of the Alabama Department of Corrections but failed to do so in "[his] case." Doc. No. 1 at 6. Although Russell does not identify the agency rules or regulations that he claims Defendants violated, even if he had, this allegation, without more, entitles him to no

relief.

Infringements of agency rules, regulations or procedures do not, standing alone, amount to constitutional violations. *See Davis v. Scherer*, 468 U.S. 183, 194 (1984) (recognizing that allegations of a violation of statutory or administrative provisions did not provide the basis for a claim of violation of a constitutional right); *United States v. Caceres*, 440 U.S. 741, 751-752 (1979) (mere violations of agency regulations do not raise constitutional questions); *Magluta v. Samples*, 375 F.3d 1269, 1279 n. 7 (11th Cir. 2004) (noting that mere fact governmental agency's regulations or procedures may have been violated does not, alone, raise a constitutional issue); *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996) (holding that a claim that prison officials have not followed their own policies and procedures does not, without more, amount to a constitutional violation). Russell's general contention that Defendants failed to follow, and thus deviated from, rules and regulations of the Alabama Department of Corrections fails to implicate a violation of any constitutional right to which he is entitled. Defendants are therefore due to be granted summary judgment on this claim.

## IV.   CONCLUSION

Based on the foregoing, the undersigned Magistrate Judge RECOMMENDS that:

1.   Defendants' Motion for Summary Judgment (Doc. No. 34) be GRANTED.

2.   Judgment be ENTERED in favor of Defendants.

3.   This case be DISMISSED with prejudice.

It is ORDERED that by **April 7, 2023**, the parties may file objections to this Recommendation. The parties must specifically identify the factual findings and legal

conclusions in the Recommendation to which objection is made. Frivolous, conclusive or general objections will not be considered by the Court. This Recommendation is not a final order and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in accordance with 28 U.S.C. § 636(b)(1) will bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waive the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH Cir. R. 3–1; *see Resol. Tr. Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 24th day of March, 2023.

_____
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE